**Brenda MILLS, Plaintiff–Appellant,**

v.

**CITY OF EVANSVILLE, INDIANA, et al., Defendants–Appellees.**

No. 05–3207.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 2006.

Decided June 20, 2006.

Virginia M. O'Leary (argued), O'Leary & Associates, Oakland City, IN, for Plaintiff–Appellant.

Robert W. Rock (argued), Bowers Harrison, Evansville, IN, for Defendant–Appellee.

Before EASTERBROOK, ROVNER, and WILLIAMS, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, —— U.S. ——, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689, 701 (2006). That principle resolves this appeal.

Brenda Mills was a sergeant of the Evansville, Indiana, police with responsibilities that included supervising "crime prevention officers" (CPOs) during the first shift in the City's west sector. According to Mills, "CPOs are part of the patrol division and are assigned throughout the city to, in part, interact with neighborhood associations in an effort to reduce the incidence of crime, foster good community relations and deal with quality of life issues."

Chief David Gulledge decided to move some officers from CPO duties to active patrol; the plan reduced by one the number of CPOs under Mills's supervision. In January 2002 Mills attended a meeting on departmental premises at which Chief Gulledge described this plan (not yet implemented) and other proposals to cope with a manpower shortage. After the meeting Mills and other officers, including Chief Gulledge, Deputy Chief Reed and Assistant Chief Burnsworth (but not Mills's immediate supervisor), discussed the subject in the building's lobby. Mills told these senior managers that the plan would not work, that community organizations would not let the change happen, and that sooner or later they would have to restore the old personnel assignment policies. Others present at the event got the impression that Mills would try to enlist community

organizations against the plan rather than describe its virtues.

Two things happened to Mills during the next months: First, Captain Brad Hill put in her personnel file a "Summary of Counseling" that disapproved her attitude at the meeting, her choice of time and place for presenting her views, and her failure to work through the chain of command. Second, Mills was removed from her supervisory position and assigned to patrol duties. That step increased her pay by $1,200 per year (because of a shift differential) but cost her the use of a departmental car, which had been at her disposal 24 hours a day. After about a week on patrol she was moved back indoors to the support services division but did not regain supervisory responsibilities or personal use of a car. We must assume that the reassignment, like the "Summary of Counseling," was a consequence of her statements at the meeting.

Mills contends in this suit under 42 U.S.C. § 1983 that Evansville (and everyone superior to her in the department's chain of command) violated the Constitution by retaliating on account of her speech. In granting summary judgment to the defendants, the district judge stated that Mills's statements at the meeting are protected by the first amendment because she addressed issues of public concern but that the department's interest in efficient management of its operations must prevail. See *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

*Garcetti*, which was issued while this appeal was under advisement, holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking "as a citizen" or as part of her public job. Only when government penalizes speech that a plain-

tiff utters "as a citizen" must the court consider the balance of public and private interests, along with the other questions posed by *Pickering* and its successors, such as *Waters v. Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); and *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■ Mills was on duty, in uniform, and engaged in discussion with her superiors, all of whom had just emerged from Chief Gulledge's briefing. She spoke in her capacity as a public employee contributing to the formation and execution of official policy. Under *Garcetti* her employer could draw inferences from her statements about whether she would zealously implement the Chief's plans or try to undermine them; when the department drew the latter inference it was free to act accordingly.

Quite apart from *Garcetti* is the fact that Evansville did not fire or demote Mills. When the Supreme Court held in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), that the first amendment bars linking hiring, firing, and promotion decisions to the employee's politics, it did not doubt that a public employer retains a powerful interest in ensuring that all positions are filled by workers who will stand behind rather than subvert the decisions made by politically accountable actors. If a chief of police can't fire or demote sergeants whose views imply less than enthusiastic support, what can he do to ensure faithful implementation? The answer must be a lateral transfer; that's how Evansville proceeded with Mills.

Public employers must be able to change assignments in response to events (including statements) that reveal whether employees will be faithful agents of the decisions made by the politically accountable managers. It promotes rather than undermines first amendment values when those who make decisions, and are held accountable for them at the polls, can ensure their implementation within the bureaucracy. Chief Gulledge was entitled to insist that his subordinates not play the "Yes, Minister" game and undermine his directions. The power of transfer is essential if the top of the bureaucracy is to see its decisions through.

Mills also contends that the letter written to her file, and the removal of her supervisory responsibilities, amounted to sex discrimination. Of this she offered not an iota of proof. By 2002 Mills had been a police officer for 27 years; the department was hardly likely to start discriminating against her so late in her career. (She has since retired.) Summary judgment was properly granted against her.

AFFIRMED